UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
                                    :

ANTHONY F. DEBELLIS,                 :

                                    :

                Plaintiff.     :

                                    :             19-CV-8730 (JMF)

       -v-                   :

                                    :        OPINION AND ORDER

POLICE OFFICER SOLOMAN et al.,    :

                                    :

                Defendants.   :

                                    :

-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff Anthony F. Debellis, proceeding without counsel, brings this suit against various

Defendants, including individual police officers, the New York City Department of Information

Technology and Telecommunications, and New York City Department of Citywide

Administrative Services ("DCAS") Disciplinary Counsel Eric Hicks, for claims arising from

three arrests. Debellis alleges that the first two arrests occurred without probable cause, that he

was unlawfully searched during the second arrest, and that one Defendant — Lieutenant Thomas

White — failed to intervene in an assault that occurred during the third arrest. Defendants now

move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims.

For the reasons that follow, their motion is GRANTED in part and DENIED in part.

## PROCEDURAL HISTORY

       The Court begins with a brief recitation of the somewhat tortured procedural history of

this case. Debellis filed this lawsuit on August 6, 2019. ECF No. 1 ("Compl.").[1]  In his original

---

[1]     References to page numbers in the Complaint, September 11, 2020 Letter, the FAC, and
Debellis's opposition are to the page numbers automatically generated by the Court's Electronic
Case Filing ("ECF") system.

Complaint, Debellis alleged that he had been an employee of DCAS for fifteen years; that he was falsely arrested; and that, notwithstanding his acquittal, he was unlawfully fired.  Compl. 5.  On October 28, 2019, the Honorable Colleen McMahon, then Chief Judge of this Court, dismissed the Complaint, citing, among other things, Debellis's failure to "allege facts showing how any of the named Defendants were personally involved in violating his constitutional rights, or even what role they played in what occurred."  ECF No. 10, at 7.  In view of his *pro se* status, however, Debellis was granted leave to amend.  *Id.* at 8.

Debellis filed his First Amended Complaint (the "FAC") on December 3, 2019, after which the matter was reassigned to the undersigned.  *See* ECF No. 11.  On February 13, 2020, the Court dismissed all but one claim in the FAC — namely, a claim that Lieutenant White had sexually assaulted Debellis — but, once again, granted Debellis leave to file an amended complaint.  ECF No. 18, at 12.  On August 20, 2020 (after various extensions), Debellis filed his Second Amended Complaint (the "SAC").  ECF No. 32; *see also* ECF Nos. 24, 31, 33.  On August 27, 2020, the Court struck the SAC as "immaterial and impertinent," but, yet again, gave Debellis "one final opportunity" to amend.  ECF No. 33, at 3.  On September 11, 2020, the Court received a letter in which Debellis clarified that he was bringing claims in connection with two arrests occurring in July 2017.  *See* ECF No. 34 (the "Sept. 11, 2020 Letter").

On October 20, 2020, the Court entered an Order of Service in which it construed Debellis's September 11, 2020 Letter to be "the operative pleading" but indicated that it would consider the FAC "as a supplemental filing to provide context for [Debellis's] claims."  ECF No. 35, at 3.[2]  In the same Order, the Court dismissed the majority of claims arising from Debellis's

---

[2]     In its October 20th Order, the Court erroneously referred to the FAC as "the second amended complaint."  ECF No. 35, at 3.  As noted, the second amended complaint was stricken.

September 2018 arrest, all claims against Debellis's criminal defense attorney (because he was

not a state actor who can be sued for damages under Section 1983), and all claims against the

Assistant District Attorney (because she was entitled to prosecutorial immunity). *Id.* at 4.  The

Court allowed several claims to proceed: (1) Debellis's claims against Sergeant James Flynn,

Detective Andrew Nash, and Officer Soloman arising out of the two July 2017 arrests; and (2)

his claim against Lieutenant White for failure to intervene in a sexual assault during a third arrest

in 2018. *Id.* at 6.[3]  Thereafter, Defendants filed the present motion to dismiss. *See* ECF No. 53.

## RELEVANT FACTS

With that, the Court turns to the facts relevant to Debellis's remaining claims, which are

taken from the September 11, 2020 Letter and Debellis's opposition papers (to the extent they

are consistent with the September 11, 2020 Letter) and assumed for purposes of this motion to be

true. *See, e.g.*, *Reynolds v. City of Mt. Vernon*, No. 14-CV-1481 (JMF), 2015 WL 1514894, at

*1 (S.D.N.Y. Apr. 1, 2015) (noting that courts may consider factual allegations in a *pro se*

plaintiff's opposition papers, so long as the allegations are consistent with the complaint); *Gill v.

Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering a *pro se* plaintiff's affidavit in opposition

to a motion to dismiss in addition to the complaint).  Consistent with its Order of October 20,

2020, the Court also includes facts from the FAC as appropriate to provide context for the claims

alleged in the September 11, 2020 Letter.

On July 20, 2017, Debellis was employed by DCAS.  Sept. 11, 2020 Letter 1; FAC 5.  On

that date, Debellis was assigned to clean 350 Marconi Street, a building in the Bronx, New York,

overnight.  ECF No. 57 ("Pl.'s Opp'n"), at 1.  Another city employee, Juan O'Sullivan, accused

---

[3]    In the FAC, Debellis claimed that Lieutenant White sexually assaulted him, FAC 8-9, but
he claims in his September 11, 2020 Letter — the operative pleading — that Lieutenant White
instead watched an unidentified officer assault him.  Sept. 11, 2020 Letter 2.

Debellis of entering his office without permission and stealing or attempting to steal city property.  FAC 5.  Debellis was arrested and, later the same night, released without charge, but when he returned to work a week later, he was arrested at the door by Officer Soloman and Sergeant Flynn.  Pl.'s Opp'n 1.  Debellis asserts that he was arrested without probable cause or "tangible evidence."  Sept. 11, 2020 Letter 1.  He pleaded guilty in August 2017 to the charges for which he was arrested; later, however, he retracted the plea and went to trial.  *Id.* at 1-2.

Just a few days after his first arrest, Debellis was arrested again, this time for allegedly accidentally shooting a cab driver.  FAC 7.  The cab driver told police that "the perpetrator came from the vicinity of [Debellis's] home," *id.*, and Debellis was subsequently "picked out of a lineup," FAC 7; Pl.'s Opp'n 2.  On or about July 25, 2017, Sergeant Flynn, Detective Nash, and other officers arrived at Debellis's mother's house, where Debellis and his sister also resided, and arrested Debellis when he came to the door.  FAC 6; Pl.'s Opp'n 2.  The officers told Debellis's sister that "the home would be confiscated" if they were not permitted perform a search, Pl.'s Opp'n 2, but their search for "radios [and a] gun" did not recover anything.  Sept. 11, 2020 Letter 1; Pl.'s Opp'n 2.  Debellis was acquitted of all charges arising from the two 2017 arrests, Pl.'s Opp'n 2, but not before he had spent approximately eight months in jail, Sept. 11, 2020 Letter 1.

Finally, on September 19, 2018, Debellis was arrested a third time after a traffic stop.  *Id.* 2; Pl.'s Opp'n 3.  In the September 11, 2020 Letter, Debellis alleges that a plain clothes officer "who [he] could not identify" arrived after the arrest and sexually assaulted him.  Sept. 11, 2020

4

Letter 2.  Debellis provides no other details about the assault but asserts that Lieutenant White —
who was identified in the FAC as the perpetrator of an assault — "was a witness."  *Id.* 3.[4]

## LEGAL STANDARD

As noted, Defendants move to dismiss pursuant to Rule 12(b)(6).  A claim will survive a
Rule 12(b)(6) motion to dismiss only if a plaintiff alleges facts sufficient "to state a claim to
relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A
claim is facially plausible if the plaintiff pleads enough factual detail to allow the court to draw
the inference that the defendant is liable for the alleged misconduct.  *Id.* at 555.  In evaluating the
motion, the Court must accept all well-pleaded factual allegations as true and draw all reasonable
inferences in Debellis's favor.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Burch v. Pioneer
Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curium).  But it does not have to
accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially
just legal conclusions.  *Iqbal*, 556 U.S. at 678.  After separating legal conclusions from well-
pleaded factual allegations, the Court must determine whether those facts make it plausible —
not merely possible — that the plaintiff is entitled to relief.  *Id.* at 679.

Because Debellis is proceeding *pro se*, the Court is obliged to construe his pleadings
liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret them to raise the
"strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474
(2d Cir. 2006) (internal quotation marks and citations omitted).  But the "special solicitude"
granted to *pro se* parties, *id.* at 475, has its limits.  To overcome a motion to dismiss, "a *pro se*

---

[4]     Debellis makes additional allegations about the alleged sexual assault in his opposition to
Defendants' motion.  *See* Pl.'s Opp'n 3.  But the Court declines to consider these allegations on
the ground that they are inconsistent with his previous filings, including the FAC, which first
stated the sexual assault claim.  *See* FAC 8-9.

plaintiff must still plead facts to state a claim that is plausible on its face." *Roundtree v. NYC*,

No. 19-CV-2475 (JMF), 2021 WL 1667193, at *3 (S.D.N.Y. Apr. 28, 2021); *see also, e.g.*,

*Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) ("[P]ro se complaints

must contain sufficient factual allegations to meet the plausibility standard . . . .").

## DISCUSSION

Debellis brings, and Defendants move to dismiss, claims for false arrest, unlawful search,

and failure to intervene.  The Court will address each claim in turn.

## A.  False Arrest Claims

Debellis's first claim is for false arrest based on both of his 2017 arrests.  Sept. 11, 2020

Letter 1.  To state a claim for false arrest under either Section 1983 or New York State law, a

plaintiff must allege "that (1) the defendant intended to confine him, (2) the plaintiff was

conscious of the confinement. (3) the plaintiff did not consent to the confinement and (4) the

confinement was not otherwise privileged."  *Ackerson v. City of White Plains*, 702 F.3d 15, 19

(2d Cir. 2012) (per curiam) (internal quotation marks omitted); *see also Weyant v. Okst*, 101 F.3d

845, 852 (2d Cir. 1996) ("A § 1983 claim for false arrest . . . is substantially the same as a claim

for false arrest under New York law.").  Thus, a plaintiff may not bring a false arrest claim if

there was probable cause to arrest him for an offense.  *See, e.g.*, *Betts v. Shearman*, 751 F.3d 78,

82 (2d Cir. 2014).  Probable cause to arrest exists if an arresting officer has actual "knowledge or

reasonably trustworthy information of facts and circumstances that are sufficient to warrant a

person of reasonable caution in the belief that the person to be arrested has committed or is

committing a crime."  *Weyant*, 101 F.3d at 852.  A court must consider the "totality of the

circumstances" in evaluating whether the "facts available to the officer at the time of the arrest"

meet that threshold.  *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (internal

quotation marks omitted). Significantly, it is enough that probable cause existed for *some* offense. That is, it is irrelevant "whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaealy v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (Sotomayor, J.); *accord Figueroa v. Mazza*, 825 F.3d 89, 99-100 (2d Cir. 2016). A statement from a credible eyewitness alleging a crime typically gives rise to probable cause. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information [regarding an alleged crime] is received from a putative victim or an eyewitness, probable cause exists . . . unless the circumstances raise doubt as to the person's veracity."); *Wahhab v. City of New York*, 386 F. Supp. 2d 277, 287 (S.D.N.Y. 2005) ("Probable cause will generally be found to exist when an officer is advised of a crime by a victim or an eyewitness.").

Applying the foregoing standards, the Court easily concludes that Debellis's false arrest claims fail as a matter of law. For starters, Debellis merely asserts in conclusory fashion that both arrests occurred without probable cause or "tangible evidence." Sept. 11, 2020 Letter 1. Although the Court must construe a *pro se* complaint liberally, it "cannot invent factual allegations that [the plaintiff] has not pled" and, "[e]ven in a *pro se* case, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010); *see also Maldonado v. Westchester Cty.*, No. 18-CV-11410 (PMH), 2021 WL 356155, at *2 (S.D.N.Y. Feb. 2, 2021). In any event, Debellis's own submissions establish that his arrests were supported by probable cause. The first arrest was supported by O'Sullivan's accusation. FAC 5. Because O'Sullivan was a "putative victim" of the alleged crime and Debellis does not allege any circumstances that would "raise doubt as to [O'Sullivan's] veracity," O'Sullivan's statement was sufficient by itself to create

probable cause for the arrest. *Curley*, 268 F.3d at 70. As for the second arrest, Debellis himself acknowledges that he was identified in a lineup, Pl.'s Opp'n 2, which is sufficient to create probable cause for arrest where, as here, there are no allegation that the lineup was "unduly suggestive," *Keith v. City of New York*, 11-CV-3577 (KPF), 2014 WL 6750211, at *13 (S.D.N.Y. Dec. 1, 2014).[5] Accordingly, both of Debellis's false arrest claims arising from his July 2017 arrests must be and are dismissed.

**B.  Unlawful Search Claim**

Next, liberally construed, Debellis's pleadings allege an unlawful search claim in connection with his second arrest. Sept. 11, 2020 Letter 1. Specifically, he alleges that Sergeant Flynn and Detective Nash led a group of police officers to his mother's house, where he resided, arrested him at the door, and then proceeded to search the house without a warrant. Pl.'s Opp'n 2; Sept. 11, 2020 Letter 1; FAC 6. He also alleges that officers threatened his sister that they would "confiscate the house" if they were not permitted to conduct the search. Pl.'s Opp'n 2. Defendants do not address this claim at all in their motion to dismiss. *See* ECF Nos. 55, 60. In light of that, and because Debellis alleges that Sergeant Flynn and Detective Nash participated in a warrantless search of the home in which he resided, the Court concludes that he states a plausible claim for unlawful search in violation of the Fourth Amendment. *See, e.g.*, *Torres v. City of New York*, No. 16-CV-2362 (RA)(KNF), 2018 WL 1737542, at *8 (S.D.N.Y. Feb. 14, 2018) ("A warrantless entry into and search of a person's home are presumptively unreasonable

---

[5]      In his opposition, Debellis alleges that his lawyer was not present during the lineup identification. Pl.'s Opp'n 2. This allegation appears nowhere in the September 11, 2020 Letter and, thus, the Court declines to consider it. *See, e.g.*, *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018). In any event, the right to counsel does not attach at a pre-arrest lineup. *See, e.g.*, *Neree v. Capra*, No. 17-CV-5434 (WFK), 2020 WL 2098097, at *8 (E.D.N.Y. May 1, 2020) (citing *Kirby v. Illinois*, 406 U.S. 682, 688 (1972)).

and, thus, violative of the Fourth Amendment." (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)).

## C.  Failure-to-Intervene Claim

Finally, Debellis brings a claim for failure to intervene in a sexual assault that he alleges occurred during his 2018 arrest.  *See* Sept. 11, 2020 Letter 3.  To state a failure-to-intervene claim, a plaintiff must allege that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene."  *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).  To determine whether the defendant had a realistic chance to intervene, courts in this Circuit consider a number of factors, including "(1) the numbers of police officers present; (2) the officers' relative placement; (3) the environment in which the officers acted; [and] (4) the nature of the assault."  *Johnson v. City of New York*, No. 15-CV-6915 (ER), 2019 WL 294796, at *9 (S.D.N.Y. Jan. 23, 2019) (citing *Figueroa v. Mazza*, 825 F.3d 89, 107-08 (2d Cir. 2016)).  The duration of the alleged violation "will always be relevant and will frequently assume great importance."  *Id.*; *see also, e.g., O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (finding that officers did not have realistic opportunity to intervene where another officer hit the plaintiff three times in rapid succession); *Ross v. Willis*, No. 16-CV-6704 (PAE) (KNF), 2021 WL 3500163, at *15 (S.D.N.Y. Aug. 9, 2021) (same where another officer pepper sprayed the plaintiff, because the spraying lasted only seconds); *Arminio v. Holder*, No. 15-CV-5812 (NSR), 2019 WL 176804, at *6 (S.D.N.Y. Jan. 11, 2019) ("On some occasions, as in this case, the seconds it takes for excessive force to occur are not enough to provide an officer with a realistic opportunity to intervene.").

Debellis fails to plausibly allege, as he must, that Lieutenant White had a realistic opportunity to intervene in the alleged assault.  In the September 11, 2020 Letter, Debellis alleges only that an unidentified officer sexually assaulted him at some point after his arrest and that Lieutenant White "was a witness."  Sept. 11, 2020 Letter 3.  He provides no facts to support an inference that there was a sufficient opportunity for Lieutenant White to intervene, such as "the number of officers present, their relative placement, the environment in which they acted, the nature of the assault, [or] a dozen other considerations." *Figueroa*, 825 F.3d at 107.  Most importantly, he does not allege how long the alleged assault lasted, let alone any details of the alleged assault that would allow for a plausible inference that it was of sufficient duration for intervention, a factor of "great importance" to this analysis.  *Id.* at 107.  Therefore, Debellis's failure-to-intervene claim must be and is dismissed.  *See, e.g.*, *McGrier v. City of New York,* No. 16-CV-5667 (VEC), 2019 WL 1115053, at *11 (S.D.N.Y. Mar. 11, 2019) (dismissing a failure-to-intervene claim where, as here, the plaintiff failed to provide sufficient detail to support the claim), *aff'd*, 849 F. App'x 268, 272 (2d Cir. 2021) (summary order).[6]

---

[6]     It bears noting also that Debellis's allegations about the sexual assault have varied widely from the FAC, to the September 11, 2020 Letter, to his opposition.  In the FAC, Debellis alleges that Lieutenant White removed him from the police car and "slid his finger down [Debellis's] backside and inserted a finger into his anal cavity" while searching him.  FAC 8-9.  In the September 11, 2020 Letter, he claims that it was an unidentified plainclothes officer who sexually assaulted him while Lieutenant White watched.  Sept. 11, 2020 Letter 3.  In his opposition, he claims that a plainclothes officer climbed into the back of the police car, "dug his elbow" into Debellis's back, removed him from the car, and sexually assaulted him, while Lieutenant White, Police Officer Allen, and a second plain clothes officer watched.  Pl.'s Opp'n 3.  Although the Court is required to construe *pro se* pleadings liberally, "the practical and accommodating rationales underlying the policy of [liberal construction] do not also militate in favor of the courts attempting to draw a line of best fit through all of a plaintiff's recitations of the facts of the case, wherever they may be found in the record."  *McIntosh v. United States*, No. 14-CV-7889 (KMK), 2016 WL 1274585, at *3 n.5 (S.D.N.Y. Mar. 31, 2016).  In any event, even if the Court were to consider the new facts alleged in Debellis's opposition, it would not change the result: They do not include the nature of the assault, the positions of Lieutenant White and the officers who allegedly witnessed it, or, crucially, how long it lasted.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Specifically, all of Debellis's claims are dismissed except for his unlawful search claim with respect to Sergeant Flynn and Detective Nash.  Sergeant Flynn and Detective Nash shall file answers **within three weeks of the date of this Opinion and Order**.  By separate Order, the Court will schedule an initial pretrial conference as to the remaining claim.

Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend, *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotation marks omitted).  Here, the Court denies leave to amend the claims that have been dismissed.  The problems with Debellis's false arrest claims are substantive, so amendment would be futile.  *See, e.g.*, *Roundtree v. City of New York*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (collecting cases).  Moreover, Debellis does not suggest that he is in possession of facts that would cure the problems with any of his claims.  *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint."); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014).  Finally, and most significantly, the Court has granted Debellis leave to amend no fewer than three times and explicitly warned that it would not allow any further amendments.  ECF No. 33, at 3; s*ee, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to

amend *sua sponte*." (collecting cases)).  Accordingly, the Court denies leave to amend the Complaint for a fourth time.

The Clerk of Court is directed to terminate all Defendants as parties except for Sergeant Flynn and Detective Nash and to terminate ECF No. 53.

SO ORDERED.

Dated:  March 28, 2022
        New York, New York

_____
JESSE M. FURMAN
United States District Judge